McKENNA LONG & ALDRIDGE LLP
230 Park Avenue, Suite 1700
New York, New York 10169
Telephone: (212) 905-8300
Facsimile: (212) 922-1819
Christopher F. Graham

Proposed Counsel for S. Gregory Hays, Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| SPONGETECH DELIVERY SYSTEMS, INC., | Case No. 10-13647(SMB) |
| Debtor. | |

## TRUSTEE'S FIRST INTERIM REPORT

**COMES NOW,** S. Gregory, Hays, the duly authorized and acting Chapter 11 Trustee (the "Trustee") for Spongetech Delivery Systems, Inc., ("Spongetech" or "Debtor") and herewith files his First Interim Report as follows:

### INTRODUCTION

The Trustee was appointed by the United States Bankruptcy Court for the Southern District of New York on Tuesday, July 20, 2010. Shortly after his appointment, the Trustee began to receive literally hundreds of emails, mostly from shareholders, either objecting to Mr. Hays serving as Trustee in this case or demanding that they immediately be provided with significant financial information regarding the Debtor. In addition, this Court scheduled a status conference in this Case on July 28. Based upon these developments, the Trustee determined that it would be appropriate to file a written Interim Report to outline the results of his initial

investigation of the affairs of this Debtor and to address certain of the issues raised by many shareholders in this case.

On July 16, 2010, the United States Trustee filed a Motion to Appoint a Trustee in this case. (Docket No. 5). This Motion lays out, in great detail, the events which preceded the commencement of these Chapter 11 Proceedings. This Report will focus on events which have transpired since the appointment of the Trustee.

The Trustee conducted meetings with Spongetech employees and management at the Spongetech offices in New York on July 21, 22, 23, 27 and 28. The Spongetech employees have provided the Trustee with limited access to the Spongetech business records. Although some specific documents and reports requested by the Trustee have been provided, not all of the documents and information requested to date has been turned over to the Trustee. In addition, the Trustee has been advised that many of the Debtor's records are in the possession of the Federal Bureau of Investigation. Based upon the limited records and information made available to the Trustee, the following is a brief report of the current financial position of Spongetech.

## REPORT

### 1. Cash Situation.

Spongetech currently has no available cash to fund its business operations. One subsidiary of Spongetech has less than $200 (Two Hundred Dollars) in a checking account. The Trustee has been in communication with the Chapter 11 Bankruptcy Trustee for Dicon Technologies LLC. ("Dicon"), who advises that Dicon is also in a liquidity crisis. Dicon is a wholly owned subsidiary of Spongetech for which an order for relief under Chapter 11 of the Bankruptcy Code was entered prior to the date on which Spongetech filed its Chapter 11 Petition. Obviously, there are substantial questions about the sources and uses of cash prior to

the Bankruptcy; however, there is simply no readily available cash to fund business operations at this time.

    **2.**    **Outstanding Accounts Receivable.**

Since the Trustee's appointment there have been no collections of accounts receivable. The Trustee is in the process of attempting to verify and collect these receivables. Debtor has provided Trustee with a schedule listing approximately $1.5 million in receivables. However, of this amount approximately $1.16 million is a receivable from Dicon, which is itself in bankruptcy, and Debtor has advised the Trustee that approximately $20,000 has been factored and approximately $27,000 is subject to set-off by the purchasers. The Debtor has advised the Trustee of one large receivable of approximately $130,000 (One Hundred Thirty Thousand Dollars) owed by a large retailer. The Trustee has attempted to verify and collect this receivable however the retailer has a "buyers hold" and has referred to this matter to its internal legal department. In addition, Spongetech holds a promissory note from a former insider of Spongetech in the face amount of $6 Million. The Trustee is attempting to collect amounts due under this note but cannot verify, as of the date of this report, whether the note is collectible or not.

    **3.**    **Inventory.**

Spongetech has advised the Trustee that they have approximately $1,000,000 (One Million Dollars) of inventory located in three separate locations. The Trustee has not verified this valuation and despite repeated requests has not been provided with a complete inventory by the Debtor. However, the Trustee has been in discussions with Spongetech as to how to sell this inventory to generate cash to fund operations over the short term. The Trustee has been told that there are several potential inventory sales which would take place late last week or early this

week, but no funds have been received as of the date of this letter. Potential purchase orders have been provided to the Trustee to date and the total of those orders is less than $100,000 (One Hundred Thousand Dollars). In addition, there are several issues related to selling the inventory including the following:

    a.    **Termination Of Nickelodeon License Agreement.**

A great deal of the inventory held by the Debtor consists of sponges produced under licenses granted by the cable network Nickelodeon. Spongetech provided the Trustee with a letter from Nickelodeon which was sent to and received by Spongetech on May 7, 2010 wherein Nickelodeon purported to terminate the license agreement pursuant to which these sponges were manufactured. The letter further states that the Debtor can no longer manufacture or sell any product manufactured pursuant to a Nickelodeon license. The Trustee's attorneys are currently reviewing the license agreement to determine whether the termination was valid and to determine whether the Bankruptcy Estate can sell the inventory with the consent of Nickelodeon. Nickelodeon has advised that the Debtor can sell inventory over the next 30 days but continues to assert that it properly terminated the license agreement prior to the filing of the bankruptcy petition. In fact, Nickelodeon asserts that Spongetech never responded to the May 7 termination letter and, more importantly, that Spongetech never paid past due royalties owed pursuant to the license agreement. The Trustee will fully investigate whether the license agreement was validly terminated and to maximize any value this contract may have; however, there is, at a minimum, substantial uncertainty about Spongetech's rights under this agreement. In addition, even if the contract is valid, it is scheduled to expire in December of 2010 and any manufacturing activities must cease in September. There are no apparent renewal rights for this contract.

### b. Termination Of Marvel License Agreement.

The Debtor also manufactures and sells products using images and trademarks licensed by Marvel Comics. Marvel has also attempted to terminate its license agreement for failure to pay royalties; however, this purported termination occurred post-petition and the Trustee does not believe that this agreement has been validly terminated. Nevertheless, relationships between the Debtor and its primary licensors are in a difficult state largely due to adverse publicity arising from the arrests of the Debtor's principals in May and failure to pay royalties.

### c. Lack Of Receivables Financing.

Prior to filing bankruptcy, Spongetech had a factoring relationship. The Trustee has been in communication with the factor and they have advised that they ceased factoring invoices for Spongetech on June 30. They further advise that they will not provide any additional financing to Spongetech. They finally advise that they are in the process of winding down their account with Spongetech and anticipate that after they completed collection of outstanding invoices they will have somewhere between $14,000 (Fourteen Thousand Dollars) and $20,000 (Twenty Thousand Dollars) in reserves to return to Spongetech. The Trustee will insure that a proper accounting of any monies which might be due and owing to the Debtor is provided by the Factor; however, since many of Spongetech's customers, particularly large retailers, insist upon 30 day or greater terms, there may be a substantial delay before Spongetech receives payment from the Factor.

### d. Office Space.

Prior to the filing of the bankruptcy case, the Debtor's New York landlord filed an action terminate the lease of the New York office/showroom and evict Spongetech. The landlord asserts it is owed approximately $150,000 in unpaid rent. The landlord has further asserted that

it properly terminated the lease pre-bankruptcy and has requested that the Trustee vacate the premises as soon as possible. If the lease was properly terminated prior to the filing of the Bankruptcy Petition, it will be necessary to vacate this space or reach alternative arrangements with the landlord. However, it is not clear that there are sufficient funds to maintain the New York office. The lack of an office/showroom and the lack of an ability to fund an office/showroom will make any sales effort more difficult. The Trustee is assessing Debtor's space needs.

e. **Sales Force.**

The Trustee has made the sale of inventory one of his top priorities at this time. The Debtor advises that it had numerous sales representatives throughout the United States at one time, some of which were employed by Spongetech and some of which were independent sales representatives. The Debtor further advises that one of its few remaining employees has been on the road actively attempting to sell product. The Trustee has also been advised that certain of the independent sales people are owed commissions and it is unclear at this point whether they will sell additional Spongetech goods. The Trustee has finally been advised that one former Dicon salesman may be in breach of his employment agreement with Dicon and may be attempting to sell competing products to Spongetech customers. As of the filing of this Interim Report, the Trustee's primary contact on sales efforts has been Steven Moskowitz. The Trustee will continue to evaluate the sales efforts as well as to assess the inventory remaining to be sold.

4. **Employee Matters.**

The Debtor currently has 9 employees, including Steven Moskowitz. The Trustee has been advised that all but one employee has not been paid since June 14, 2010 and that the

remaining employee has not been paid since June 4, 2010. The Debtor owes approximately $65,000 in post-petition salary.

Additionally, Debtor's health insurance premium for the month of July is due on Friday, July 30, 2010. The health insurance was cancelled for non-payment in June and Trustee has been advised that it was reinstated on July 26, 2010. The policy expires this month. The amount necessary to fund this premium is $17,000. As of the filing of this report, no funds exist to make this payment.

5.     **Insurance Matters.**

The premiums for general liability and workers comp and currently due and there are no funds to pay the insurance. The payment due is approximately $18,000. The Debtor received a cancellation notice for all but the workers comp policy on July 28, 2010. In addition, the Trustee is exploring whether it is possible or feasible to procure "tail" coverage for the Debtor's directors and officers policy. At present, however, there are no funds available to procure this coverage.

6.     **Dicon Technologies.**

Dicon Technologies, Inc., a wholly owned subsidiary of Spongetech, is a debtor in a Chapter 11 Proceeding in the United States Bankruptcy Court for the Southern District of Georgia. Many of the emails received by the Trustee inquire as to when the Dicon case will be moved to New York and consolidated with the Spongetech case. The Trustee has had discussions with the Trustee for Dicon who advises that Dicon and its creditors will oppose any effort to move the Dicon Bankruptcy Case to New York and/or to consolidate the Dicon case with the Spongetech case. The Dicon Trustee advises that there are over $1,000,000 in claims asserted against Dicon which are unique to Dicon and Debtor has approximately $1,160,000

receivable from Dicon. Please note that since the Dicon case was "first filed" in the Bankruptcy Court for the Southern District of Georgia, it cannot be easily transferred to the New York Bankruptcy Court. The Dicon Trustee will also oppose any effort to consolidate Dicon with Spongetech. The Trustee is continuing to review and analyze the situation with Dicon and is in communication with the Dicon Trustee. The Trustee has not reached any conclusions as to whether to forcibly seek the transfer of the Dicon case to New York or to forcibly seek the substantive consolidation of Dicon with Spongetech.

In deciding how to address the Dicon situation, the Trustee's primary consideration will be how to best maximize the value of Spongetech's ownership interest in Dicon for the benefit of creditors and shareholders of Spongetech.

7. **SEC Filings.**

Several emails inquire as to when the Trustee will make required securities filings for Spongetech. At present, the Trustee has asked for copies of any such documents or other financials prepared by Spongetech, but have not yet received them to the extent they exist. The Trustee has not yet determined whether any financials prepared prior to the bankruptcy are accurate and properly prepared. The Trustee will not make any securities filings on behalf of Spongetech unless they have been properly prepared and are based upon audits performed by independent accounting firms. The Trustee will also not file any documents which are based upon information prepared by the management of Spongetech which have not been independently verified. Because there are no financial resources to prepare these documents and because there are other more important matters which need to be addressed immediately, the Trustee does not anticipate that there will be any such filings in the near future.

### 8. Accounts Payable.

Spongetech advises that there are approximately $11,800,000 in outstanding, pre-petition accounts payable. The Trustee has not verified the amount of pre-petition unsecured claims. However, pursuant to the Bankruptcy Code, these claims must be paid in full prior to any return to shareholders.

### 9. Trustee's Appointment.

Several emails from shareholders inquire about Mr. Hays' qualifications to serve as Trustee in this case. The Trustee was selected to serve as Trustee in this matter after an extensive interview with the United States Trustee for the Southern District of New York. Mr. Hays has over 20 years of experience in serving as a Bankruptcy Trustee or working with Bankruptcy Trustee's in large complex bankruptcy matters. Mr. Hays is a Certified Turnaround Professional (CTP) by the Turnaround Management Association and a Certified Insolvency and Restructuring Advisor by Association of Insolvency and Restructuring Advisors.

As has been pointed out in several emails, Mr. Hays' primary office is in Atlanta, Georgia. Please note that serving as Trustee in this case will require that the Trustee and professionals employed by him spend substantial time in both New York and Georgia which is where the Dicon assets and business records are located. The Trustee has a financial consultant on his team who lives in New York who will serve as the primary manager for the engagement.

There also seems to be a significant misunderstanding in emails from shareholders about the Trustee's relationship with the SEC. As noted in Mr. Hays' publicly available resume, he has been appointed to serve as a receiver in numerous and federal state courts throughout the United States. Some of these appointments have come in enforcement actions brought by the SEC. When Mr. Hays has served as a receiver in SEC enforcement actions, he is actually

appointed by the Federal Court Judge handling the case, not the SEC. Moreover, the role of a receiver in receivership cases is to look out for the interests of creditors and investors, not the SEC. Indeed, Mr. Hays is only one of many insolvency professionals whom the SEC recommends, from time to time, to serve as receivers in matters brought by them. Mr. Hays does not work for and is not employed by the SEC and has never been paid any salary or compensation by the SEC. None of his family members work for or are employed by the SEC.

It is a matter of public record in this case that the SEC submitted Mr. Hays's name to the Court to serve as a receiver for Spongetech in the enforcement action brought by the SEC. However, the Court never ruled on the SEC's Motion and Mr. Hays was never appointed to serve as receiver.

In its Motion to Appoint a Chapter 11 Trustee, the U.S. Trustee specifically mentioned that Mr. Hays had been recommended to serve as receiver in the SEC Action.

As this Court is well aware, the Trustee's fiduciary responsibility as the Trustee in this case is to maximize the value of the Spongetech assets for the benefit of the creditors and investors in this case and that is how he intends to manage this case.

The Trustee has selected the law firm of McKenna Long & Aldridge LLP ("MLA") to serve as his counsel in this case. MLA has experienced bankruptcy professionals both in their New York and Atlanta offices, and can very efficiently handle this matter, particularly in the event any litigation is required in the Dicon Bankruptcy Case which is pending in Georgia.

Finally, with respect to the Trustee's fees and expenses, any fees or expenses incurred by the Trustee or professionals employed by the Trustee, including travel and other costs, are subject to review by the Bankruptcy Court and the guidelines established by the United States Trustee. Neither the Trustee nor any professional employed by the Trustee can be paid anything

without prior review by the Court and the United States Trustee. The Trustee's focus in this case will be to handle the matter as efficiently as possible to realize the greatest return for creditors and shareholders.

**10.    DIP Financing.**

The Debtor has advised the Trustee that they have had contact with several entities concerning the provision of debtor-in-possession financing. The Trustee has requested written proposals for such financing but none have been received. The Trustee has been advised that one or more shareholders may have provided monies to principals of the Debtors to be used for DIP Financing. Since any post-petition financing must be approved by the Bankruptcy Court, no one should provide any monies to the Debtor or its management absent express approval from the Court. The Trustee is still investigating to determine whether any such financing is feasible in this case.

**11.    Current Outlook.**

The Trustee has reached no conclusion about any matters pertaining to Spongetech. However, the current situation is dire. Based upon information currently available to the Trustee, it appears that the potential assets of Spongetech, (particularly if the Nickelodeon agreement has been validly terminated) are significantly less than unsecured claims which may be asserted against the Bankruptcy Estate. Pursuant to the priority rules established by the Bankruptcy Code, unsecured creditors must be paid in full before any funds or returns can be received by shareholders. In addition, there does not appear to be any available financing to reorganize or restructure this company.

**12.    Future Reports.**

It will be impossible for the Trustee to answer each and every email which is sent to him and attempting to respond to individual requests will take away from time which is more effectively spent attempting to maximize the return to creditors and shareholders. As a result, the Trustee will endeavor to keep creditors and shareholders posted as to the status of the Bankruptcy Case by posting reports from time to time on his firm website.

Please note that Spongetech's current directors, officers and employees are not authorized to comment on the current status of Spongetech or its financial affairs. To the extent you obtain information from them, you should not rely on it. The only persons authorized to speak for me or for the Bankruptcy Estate are myself and professionals employed by me.

Dated:  New York, New York
        July 29, 2010

MCKENNA LONG & ALDRIDGE LLP

By: /s Henry F. Sewell, Jr.
    Henry F. Sewell, Jr.
    Georgia Bar No.:  636265

303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
(404) 527-4000

-and -

Christopher F. Graham
230 Park Avenue, Suite 1700
New York, New York  10169
(212) 905-8300