SILVERMANACAMPORA LLP
Counsel to Kenneth P. Silverman, Esq., Chapter 11 Trustee
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Christine T. Quigley

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
AT BOWLING GREEN
-----------------------------------------------------------------x
In re:                                                              Chapter 11

SPONGETECH DELIVERY SYSTEMS, INC.,          Case No. 10-13647 (SMB)

                        Debtor.
-----------------------------------------------------------------x

## CHAPTER 11 TRUSTEE'S STATUS REPORT

Kenneth P. Silverman, Esq., the chapter 11 operating trustee (the "Trustee") of the estate of SpongeTech Delivery Systems, Inc. (the "Debtor"), by his attorneys, SilvermanAcampora LLP, respectfully submits the following Status Report.

### The Status Of The Debtor's Chapter 11 Bankruptcy Case

1.  The Debtor's case was filed on July 9, 2010 (the "Filing Date). No schedules were filed by the Debtor at that time.[1]

2.  By Order of the Court dated, July 19, 2010, and Notice of Appointment dated July 20, 2010, S. Gregory Hays ("Hays") was appointed as the chapter 11 operating trustee of the estate. On August 3, 2010, by Notice of Withdrawal, Hays resigned as trustee. By order dated August 4, 2010, Hays was discharged of his duties, and Kenneth P. Silverman, Esq., was appointed as the Successor Operating Trustee.

3.  By order dated August 16, 2010, the Court authorized the Trustee to retain SilvermanAcampora LLP as his counsel, effective August 4, 2010.

---

[1] Additional information regarding the Debtor's business and the circumstances leading to the filing of the Debtor's bankruptcy case is contained in the United States Trustee's "Motion for Order Directing the Appointment of a Chapter 11 Trustee or, in the Alternative, Converting the Case to Chapter 7 of the Bankruptcy Code", dated July 16, 2010 (Docket No. 6).

4. The Trustee has submitted an application to retain Janover LLC ("Janover") as Trustee's accountant, which is being revised and resubmitted to the Court for approval.

5. The Debtor has not filed any monthly operating statements.

6. As explained below, the Debtor's books and records are incomplete, in disarray, and wholly unreliable. At the request of the Office of the United States Trustee, the Trustee has filed a list of creditors, without any monetary amounts, the Twenty Largest Unsecured Creditors List, and Schedule F, accompanied by an appropriate disclaimer.

7. The Trustee has been advised that the Debtor's remaining officer, Steven Moskowitz ("Moskowitz"), its Chief Operating Officer and Chief Financial Officer, will *not* attend the §341 meeting or any other proceedings, or execute documents or pleadings in conjunction with the administration of this case on advice of his criminal counsel.

### The Criminal And Civil Actions By The United States Against The Debtor And Its Officers And Directors

8. In May 2010, the United States of America filed a criminal complaint in the United States District Court for the Eastern District of New York charging Moskowitz and the Debtor's then President and Chief Executive Officer, Michael Metter ("Metter") with conspiracy to commit fraud and obstruction of justice. Moskowitz and Metter were arrested by the Federal Bureau of Investigation ("FBI") for their alleged criminal activity which raided the Debtor's premises and removed most of the Debtor's invoices, books and records, bank statements, and computers. Metter resigned from his position with the Debtor on June 8, 2010.

9. At the same time, the Securities and Exchange Commission filed a civil complaint against Metter, Moskowitz and several others, alleging, *inter alia*, that they were involved in a massive "pump and dump" scheme dating back to 2007, whereby, as part of their scheme, they allegedly deceived the investors through false statements about non-existent SpongeTech customers, fake sales orders, and phony revenue. According to the SEC Complaint, the defendants then "dumped the fraudulently inflated shares by illegally selling

them to the public through affiliated entities in unregistered transactions."[2]

### The Status Of The Trustee's Investigation

10. Since his appointment, the Trustee, his counsel and his proposed accountants have conducted multiple fact finding interviews and conferences with (a) Moskowitz, (b) Mark Kranczer ("Kranczer"), the Debtor's Controller since June 2009, (c) Ira Minkoff ("Minkoff"), the Debtor's Vice President of Sales since April 2010, (d) Yitzchak Katz a/k/a Yitzie Katz ("Katz"), the Debtor's marketing and IT Manager, and (e) Martin Goldstein a/k/a Mordy Goldstein ("Goldstein") the Debtor's Inventory Control Manager.

11. The Trustee and his retained professionals have also visited the Debtor's New York offices on at least three (3) occasions in order to (a) interview and furlough a number of its existing employees, and (b) secure its remaining financial records and related data, marketing and promotional materials, computer system and related intellectual technology, not previously confiscated by the FBI.

12. The Trustee is in the process of obtaining multiple Bankruptcy Rule 2004 orders and will be submitting further applications in order to obtain a better understanding of the Debtor's business and operations.

13. As explained below, the Trustee and his professionals have secured the Debtor's premises and begun their analysis of the Debtor's available books and records. The lack of a complete and accurate set of books and records is hampering the Trustee's investigation and is delaying the Trustee from creating a reliable due diligence package to disseminate to potential debtor-in-possession lenders, plan proponents, investors, or prospective purchasers of the Debtor's business or its assets.

---

[2] See UST's motion for appointment of a Chapter 11 Trustee, p. 2.

**The Debtor, Its Business And Subsidiaries**

**The Debtor And Its Subsidiaries**

14. The Debtor, a publicly held Delaware corporation, was a manufacturer and distributor of cleaning products designed for the home, automobile, watercraft and pets. The Debtor's customers include Costco, Sears, Walmart, and KMart.

15. The Debtor has eight (8) subsidiaries: Dicon Technologies, LLC[3], SpongeTech® Europe, SpongeTech® Health & Beauty, Inc., SpongeTech® Kitchen & Bath, Inc., SpongeTech® Auto, Inc., SpongeTech® Medical, Inc., SpongeTech® Pet, Inc., and The Smarter Sponge Company™. Steven Moskowitz ("Moskowitz"), the Debtor's Chief Operating Officer and Chief Financial Officer is currently the sole officer and director of the Debtor and each of its subsidiaries except SpongeTech® Europe.[4]

16. The Trustee's initial review of the Debtors' books and records and his initial interviews with the Debtor's employees revealed that the Debtor and its subsidiaries intermingled their business relationships. The Trustee anticipates that he will file voluntary bankruptcy petitions for all of the subsidiaries, except Dicon, and seek substantive consolidation in order to streamline the administration of the Debtor's bankruptcy case.

**The Debtor's Accountants**

17. Prior to the bankruptcy filing, the Debtor had retained Robison & Hill ("Robison") as its accountants. The Debtor's prior accountants were Drakeford & Drakeford. The Debtor has not complied with any of its SEC filing requirements since at least February 2009. The Trustee and his professionals have preliminarily concluded that the Debtor's books and records as well as its financial reporting are unreliable.

---

[3] Dicon, a cosmetics manufacturer, was purchased by the Debtor on July 9, 2009, and is currently in an involuntary chapter 11 proceeding in the United States Bankruptcy Court for the Southern District of Georgia. Dicon's Trustee is Lloyd T. Whitaker.

[4] Upon information and belief, the Debtor owns a 52% interest in SpongeTech® Europe.

**The Debtor's Offices**

18. The Debtor's offices are located at 10 W. 33rd Street, New York, New York. Although eight (8) years remains on the Debtor's lease, the Debtor has not paid its $20,000 monthly rent since the beginning of 2010 and its landlord has obtained a pre-petition warrant of eviction. The Trustee had secured the premises, and continues to retain access to the premises and removing any remaining financial records.

**The Debtor's Employees**

19. As of the Filing Date, the Debtor had eight (8) employees, seven (7) of whom had not been paid for a minimum of eight (8) weeks and one (1) of whom had not been paid for ten (10) weeks.

**The Debtor's Inventory**

20. The Debtor's inventory is located at four (4) locations. They are (a) the New York office for purposes of internet sales, (b) the Dicon warehouse facility in Georgia, (c) the Oneida Warehouse in Georgia, and (d) the Easter Seals Warehouse in New Jersey. The Debtor's books and records do not provide an accurate inventory sufficient to allow the Trustee to sell product at this time. Additionally Dicon, Oneida and Easter Seals all claim that they are owed substantial sums from the Debtor and have refused to release any further inventory unless and until a mutually agreeable mechanism can be arranged to insure that they will be paid for any product that they release from their liens.

21. The Trustee and his professionals are diligently working to determine the nature, extent and value of the Debtor's inventory at its four (4) locations and to obtain a consensual release of that inventory on appropriate business terms. At this time, the Trustee and his professionals do not have a sufficient understanding of the actual value of those assets to make any disclosure or to anticipate the funds that can be realized from the sale of the inventory.

LMM/542410.1/059228

**The Debtor's Accounts Receivable**

22. Based upon the information currently available to the Trustee, the Debtor was behind in its collection of its accounts receivables and royalty payments. At this time, the Trustee and his professionals do not have a sufficient understanding of the actual value of those assets, not withstanding their extensive and diligent efforts to the contrary, to make any disclosure or to anticipate the funds that can be realized from their collection.

**The Debtor's Patents, Trademarks And Licenses**

23. The Debtor claims to have various patents, trademarks, trade secrets and licenses. The Trustee and his professionals are attempting to verify the authenticity and ownership of those intangibles as well as their value.

24. At this time, the Trustee and his professionals do not have a sufficient understanding of the actual value of those assets to make any disclosure or to anticipate the funds that can be realized from their sale.

**The Debtor's Accounts Payable**

25. The Debtor's Schedule "F" reflects almost $12 million in liabilities. As with the asset side of the Debtors' general ledger, the Trustee and his professionals are endeavoring to obtain an accurate assessment of the liabilities. As evidenced by the schedules filed by the Trustee and the disclaimer annexed thereto, at this time, the Trustee and his professionals do not have a sufficient understanding of the actual sums owed by the Debtor in order to make any reliable disclosure.

**The Debtor's Insurance Policies**

26. The Debtor's insurance policies have either expired or have been canceled for non-payment. More specifically, the Debtor's property, casualty, commercial liability, worker's compensation and product liability policies expired on July 2, 2010, were renewed by the Debtor which was unable to pay (and continues to be unable to pay) the $17,000 premium, and, therefore, expired on August 20, 2010. The Debtor's Directors & Officers ("D&O") liability

insurance policy with a face value of $5 million expired on June 30, 2010.[5] The Debtor's health insurance was canceled because the premiums for July and August 2010 were not paid. Those policies can be reinstated for $32,000.

**The Trustee's Suspension Of The Debtor's Operations**

27. Based upon, among other things, (a) the Trustee's investigation and interviews, (b) the current state of the Debtor's operations, (c) the lack of reliability of the Debtor's available books and records, (d) the absence of insurance, the necessity to vacate the Debtor's premises, and (e) the lack of available funds to continue in business, on August 13, 2010, the Trustee furloughed the Debtor's eight (8) remaining employees, and secured the Debtor's premises until he and his professional can assess the viability of the Debtors' business model and the prospect of a reorganization or sale of the Debtor's business.

28. The Trustee's determination to temporarily suspend the Debtor's operations will enable the Trustee and his professionals to preserve the value of the Debtor's business by enabling them to acquire a sufficient understanding of the Debtor's actual business model so that a proper due diligence package can be prepared to solicit offers for financing or acquisition.

**Shareholder Issues**

29. The Debtor's stock has been delisted by the Securities and Exchange Commission but apparently continues to trade in the gray market. According to the information available to the Trustee and his professionals, there are allegedly *three billion* shares outstanding. Based upon their communications with the Trustee, individual shareholders have lost between $10,000 and $15 million in connection with their investment in the Debtor.

---

[5] GreenbergTraurig, LLP, former counsel to the Debtor and current counsel to Michael Metter, the Debtor's President and Chief Executive Officer, have sought permission to obtain payment under the D&O Policy. That motion is returnable on August 26, 2010. GreenbergTraurig, LLP has consented to the adjournment of the motion, subject to the approval of the Court, to September 8, 2010 in order to allow the Trustee sufficient time to analyze the request. Based upon its initial review of the D&O Policy, the Trustee's counsel does not anticipate filing an objection to the motion.

30. The Trustee and his counsel have received innumerable e-mails and telephone calls from the Debtor's shareholders concerning a wide variety of issues ranging from advice regarding the reorganization of the Debtor to questions concerning the recovery of their investment. As the Trustee in *In Re Agape World, Inc.*, a Ponzi scheme case pending in the United States Bankruptcy Court for the Eastern District of New York involving a loss in excess of $370 million spread across more than 5,500 investors, the Trustee and his counsel are keenly aware of the concerns voiced by the Debtor's shareholders and, consequently, have endeavored to respond to as many individual shareholder inquiries as realistic under the circumstances. However, because the administrative cost of responding to individual shareholder inquiries is significant and, in the vast majority of cases, does not further the Trustee's administration of the Debtor's bankruptcy case, the Trustee and his counsel have created a website entitled www.spongetechtrustee.com as a mechanism to disseminate information to creditors and shareholders. The Trustee intends to conduct a webinar in the near future in order to inform all known interested parties of the Debtor's case status, and has changed the Debtor's voicemail and email systems so that all inquiries are forwarded to his counsel's office.

31. Currently, the Trustee is unable to predict whether, and under what circumstances, shareholders may receive a distribution in the Debtor's bankruptcy case.

LMM/542410.1/059228

**WHEREFORE**, the Trustee respectfully submits this Chapter 11 Status Report to provide the Court, creditors, parties in interest, and potential purchasers with an update regarding the Debtor's case.

Dated: Jericho, New York
      August 24, 2010

**SILVERMANACAMPORA LLP**
Counsel to Kenneth P. Silverman, Esq.,
Chapter 11 Trustee

By: *s/Anthony C. Acampora*
Anthony C. Acampora
A Member of the Firm
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
(516) 479-6300