UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
AT BOWLING GREEN
------------------------------------------------------------------x
In re:

SPONGETECH DELIVERY SYSTEMS, INC.,

Chapter 11
Case No. 10-13647 (SMB)

Debtor.
------------------------------------------------------------------x

## **CHAPTER 11 TRUSTEE'S FINAL REPORT AND ACCOUNTING**

Kenneth P. Silverman, Esq. (the "Trustee"), the Chapter 11 Trustee of SpongeTech Delivery Systems, Inc., the above captioned debtor and debtor-in-possession, as and for his Chapter 11 Final Report and Accounting (the "Final Report") respectfully sets forth and represents as follows:

1. On July 9, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief in accordance with Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

2. On July 19, 2010, the Court, having found that cause existed to appoint a trustee under Bankruptcy Code §1104(a)(1) and that it was in the best interest of the estate and its creditors to appoint a trustee under §1104(a)(2), entered an Order directing the United States Trustee to appoint a trustee. By Notice of Appointment dated July 20, 2010, S. Gregory Hays (the "Initial Trustee") was appointed Chapter 11 Trustee of the Debtor's estate.

3. On August 4, 2010, having determined that it was in the best interests of the estate and its creditors, the Initial Trustee resigned as Chapter 11 Trustee of the Debtor's estate.

4. By Order dated August 4, 2010, the Court discharged the Initial Trustee and approved the appointment of Kenneth P. Silverman, Esq., as the successor Trustee, and the Trustee filed his bond as required by applicable law.

5. Petitioner makes this Final Report and Accounting for the period August 4, 2010 through and including November 9, 2010 (the "Chapter 11 Period").

6. Because the Debtor did not have the means, No Plan of Reorganization could be

LMM/795272.1/059228

filed in this matter, and on October 11, 2010, the Trustee filed a motion to convert the Debtor's chapter 11 case to one under chapter 7.

7. By Order of this Court dated November 10, 2010, the Debtor's case was converted to a chapter 7 liquidation proceeding.

8. During his administration of the Debtor's Chapter 11 case, the Trustee has (i) obtained the turnover of the accounts receivable balance from the former factor in the amount of $885.92; (ii) received the turnover of the proceeds from the Debtor's tax refund of $629.53; (iii) collected $29,389.56 from accounts receivable; and (iv) received the refund of insurance premiums in the amount of $4,824.24. The Trustee has disbursed $2,500.00 to McCallar Law Firm for its representation of the Trustee in the Dicon Technologies, LLC matter, denominated Case No. 10-41275 (LWD) pending in the United States Bankruptcy Court for the Southern District of Georgia.

**Financial Status of Estate**

9. From August 4, 2010 through November 9, 2010, the Trustee continued as the chapter 11 trustee, when the Court issued and entered an order converting the Debtor's chapter 11 matter to a chapter 7 liquidation proceeding. On November 10, 2010, the Trustee was appointed as the interim chapter 7 Trustee, and the Trustee has not received any other funds into this estate at this time, other than the turnover of the proceeds from the chapter 11 period as listed hereinabove.

10. The total receipts received and disbursements made to date in this case are reflected on the Trustee's Form 2, a copy of which is annexed hereto as **Exhibit A**. Also annexed hereto, as **Exhibit B**, are original bank statements and canceled checks for all accounts since the Trustee's appointment.

11. As of November 11, 2010, the Trustee holds $33,229.75, all of which is available for use in the chapter 7 case.

12. No prior awards of compensation to the Trustee have been applied for or paid.

13. Although the Trustee earned commissions based upon the total disbursements made thus far in the amount of $2,500.00 through November 9, 2010, the total maximum compensation

earned, and to be earned, by the Trustee during the Chapter 11 period is $625.00, as follows:

| | | |
|---|---|---|
| Disbursed during Chapter 11 period: | $2,500.00 | |
| 25% of the First $5,000.00 | $625.00 | ($1,250.00 max.) |
| **TOTAL MAXIMUM COMPENSATION UNDER 11 U.S.C. §326** | **$625.00** | |

14. Based on the foregoing, the Trustee waives any claim for the *de minimis* outstanding commissions and does not seek further payment of commissions earned for the chapter 11 period.

**Trustee's Tasks**

15. The Trustee, as the fiduciary to the estate invariably performs certain services that are essential to his proper and efficient administration of the estate which, because of the magnitude and complexity of his caseload and the recurring nature of such services, are frequently <u>not</u> included by the Trustee in his contemporaneous daily time sheets. More specifically, the Trustee, in accordance with his fiduciary obligations as a chapter 11 trustee, <u>always</u>, among other things, (a) prepares for and conducts a Bankruptcy Code §341 Meeting and then issues instructions to various paralegals and other employees regarding the continued administration of the case; (b) opens, maintains and monitors a separate bank account for, and addresses money management issues throughout the administration of, each chapter 11 case; (c) makes business decisions and issues instructions to his employees, based upon the specific factual predicate of each chapter 11 case, regarding (i) the retention of professionals, including but not limited to, counsel, special counsel, accountants and auctioneers; (d) directly responds to inquiries from the Bankruptcy Court, the Office of the United States Trustee, the debtor's estate; and (e) confers with and monitors the performance by his retained professionals of their duties on behalf of the estate. In addition to the foregoing, the Trustee reviews the claims and the fee applications submitted by retained professionals in each and every chapter 11 case in which he is appointed the trustee.

16. Accordingly, the Trustee expended a significant amount of time in this case performing the tasks that are crucial to the proper administration of this case and to the

performance of his fiduciary duties.

17. The Trustee performed the following specific tasks:
    a. telephone conference with former Chapter 11 Trustee, S. Gregory Hays regarding case status, location of assets, potential of business plan, Robison & Hill audit, and business operation issues;

    b. obtained Trustee's Chapter 11 bond;

    c. telephone conference with Debtor's purported counsel regarding case background, his prior and future representation of the Debtor, and preparation and filing of Schedules;

    d. reviewed case docket and pleadings filed to date to glean necessary information as to Debtor's business operations and SEC litigation against Debtor's principals;

    e. conducted several conferences with Debtor's officer, Steven Moskowitz ("Moskowitz"), Sales Manager, Ira Minkoff ("Minkoff") and Accounts Payable Manager, Mark Kranczer ("Kranczer") regarding historical background, cash flow, case status and strategy regarding reorganization;

    f. prepared for, and appeared at Debtor's premises to interview officer and employees; reviewed accounts payable, accounts receivable, inspected intellectual technology, reviewed books and records, inspected product, inventory, marketing materials, and business plan;

    g. prepared for, and attended organizational meeting of the Office of the United States Trustee;

    h. prepared application for retention of SilvermanAcampora LLP as counsel to the Chapter 11 Trustee, and obtained United States Trustee and Bankruptcy Court approval of that retention;

    i. caused his counsel to retain Janover LLC as accountants for the Chapter 11 Trustee, and obtained United States Trustee and Bankruptcy Court approval of said retention;

    j. conducted conference with Moskowitz, Minkoff, and Kranczer and other employees regarding their proposed business plan to fund operations and conferred with counsel and accountant regarding same;

    k. conferred with his counsel and accountants regarding company website, forensics, webinar, Debtor's schedules, and related issues;

l.  reviewed cash flow projection, asset schedules, various pleadings filed by the United States Of America against Moskowitz and former Officer, Michael Metter ("Metter");

m.  reviewed criminal indictments of Metter and Moskowitz and conducted telephone conference with Moskowitz's criminal counsel, Ben Brafman regarding SEC litigation and Moskowitz's continued cooperation in the Debtor's bankruptcy case;

n.  caused his counsel to set up web page for communications with shareholders and employees of the Debtor;

o.  conferred with his counsel and accountant regarding review of Debtor's business operations and determination of viability of business operations;

p.  telephone call with David R. Maltz & Co., Inc. to secure premises and related issues with furlough of employees and removal of personal effects from premises and turnover of premises back to the landlord;

q.  caused his counsel to prepare mail re-direct to forward all mail of the Debtor to my office;

r.  caused his counsel to prepare applications for various Rule 2004 orders for the examination and production of documents by numerous banking institutions and related parties to the Debtor to determine location of assets, dissipation of funds from the Debtor's business, and other litigation that should be pursued for the benefit of the creditors of this estate;

s.  conferred with his counsel and accountants and drafted preliminary status report; scheduled status conference to inform Bankruptcy Court of the Debtor's operations, including status of pursuit of inventory, resolution of intellectual technology and property issues, and collection of receivables;

t.  prepared for, and attended, de-briefing session with Debtor's employees, inventory books and records, and monitored removal of personal effects;

u.  conducted follow up meetings with counsel regarding status of their pursuit and negotiation of settlement of accounts receivable from factors and others; review accounts receivable status chart;

v.  telephone conferences with Morris Tabush regarding disconnection of server's access other than for Trustee's staff and subsequent disconnection of all service;

w. conducted follow up meeting with Moskowitz and the Trustee's counsel regarding collection of receivables and obtained Moskowitz's backup and history of negotiations regarding same;

x. extensive communications with shareholders and former employees regarding case status, filing of administrative proofs of claim, and pre-petition proofs of claim for monies owed and respond to numerous shareholder inquiries;

y. reviewed the motion filed by Greenberg Traurig for advancement of defense costs;

z. downloaded and reviewed Dicon Technologies, LLC ("Dicon") operating report for June 29, 2010 through July 31, 2010 and conferred with counsel and accountants regarding same;

aa. reviewed a plethora of documents regarding various stock transfers by the Debtor's clearing houses;

bb. prepared for, and attended status conference and Office of the United States Trustee's Initial Debtor Interview to present case status to creditors and interested parties;

cc. caused his counsel to confer with Special Agent McGuire regarding the transfer of computers used by Metter, Barry Kolvezon, and Moskowitz to the FBI for their investigation;

dd. conferences with Assistant U.S. Attorney William Shaeffer and Special Agent McGuire regarding seized documents;

ee. filed a Notice of Appearance and Request For Service in the Dicon matter;

ff. conferences with his counsel and accountants regarding due diligence package for possible sale of the Debtor's assets;

gg. contemplation of offers proffered to purchase inventory and the Debtor's business shell and conferred with counsel regarding asset valuation;

hh. reviewed Dicon sale motion and conferred with my counsel; drafted opposition papers to Dicon sale motion;

ii. caused his counsel to retain local counsel in Savannah, Georgia to represent me in the Dicon matter;

jj. caused his counsel to conduct legal research on cases regarding the Dicon Trustee's duty in sale of assets and propriety of break-up fee;

kk. directed his counsel to analyze numerous objections to Dicon sale of assets filed by the Debtor's shareholders and conferred regarding facts, legal issues and strategies related to Dicon Trustee's motion to sell assets in anticipation of hearing on September 23, 2010 in Savannah, Georgia;

ll. caused his counsel to draft and file opposition papers to the Dicon motion to sell assets;

mm. conferred with local counsel, James McCallar and Tiffany Caron in Savannah, Georgia, Dicon Trustee's counsel and Dicon Creditors Committee Counsel regarding issues related to Dicon Trustee's sale motion in preparation for hearing and their request to withdraw objections to sale;

nn. travelled to Savannah, Georgia, and prepared for, and attended, including argument and cross examination, the hearing on Dicon Trustee's proposed sale of assets;

oo. reviewed conformed Order approving sale of Dicon assets, and conferred with counsel;

pp. reviewed the Debtor's licensing agreements with various organizations for product sales and distribution;

qq. reviewed COBRA laws and conferred with Debtor's employees regarding status of their health insurance coverage;

rr. directed his counsel to confer with Debtor's landlord relating to issues regarding surrender of premises and third party and vendor access to shared equipment at the Debtor's location;

ss. conferred with his counsel regarding SEC regulations, substantive consolidation litigation, potential litigation, and case administration; and

tt. conferred with his counsel regarding filing a motion to convert the Debtor's chapter 11 case to one under chapter 7 and provide notice to all creditors and interested parties.

18. Based on the foregoing, no further monies will be disbursed to the Trustee for his work during the Chapter 11 period.

19. No agreement or understanding exists between the Trustee or any other person or entity for the sharing of compensation received or to be received for services rendered in any capacity whatsoever in connection with this case.

20. No prior application for the relief sought herewith has been made to this or any other Court.

**WHEREFORE,** the Trustee prays for the approval of this Chapter 11 Final Report and Accounting, and for such other, further and different relief as this Court deems just and proper.

Dated: Jericho, New York
November 14, 2010

                                      Kenneth P. Silverman, Esq., as
                                      Former Chapter 11 Trustee

                        By:    *s/Kenneth P. Silverman*
                                    Kenneth P. Silverman, Esq.

LMM/795272.1/059228