UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                                                    Chapter 7

SPONGETECH DELIVERY SYSTEMS, INC.,               Case No. 10-13647 (SMB)

                                    Debtor.
-------------------------------------------------------------------x

**ORDER ESTABLISHING SALE PROCEDURES, INCLUDING
PROCEDURES GOVERNING THE PROPOSED PUBLIC AUCTION AND
NOTICE, APPROVAL OF A BREAK UP FEE FOR THE STALKING HORSE OFFEROR
IN CONNECTION WITH CHAPTER 7 TRUSTEE'S PROPOSED SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS, SUBJECT TO HIGHER OR BETTER OFFERS, FREE
AND <u>CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES</u>**

Upon the motion dated March 7, 2011 (the "Motion") of Kenneth P. Silverman, Esq., the chapter 7 trustee of the estate of Spongetech Delivery Systems, Inc. (the "Debtor"), by his undersigned attorneys, SilvermanAcampora LLP ("SilvermanAcampora"), seeking, among other relief, the entry of an order in accordance with sections 105 and 363 of title 11, United States Code (the "Bankruptcy Code"), and related Federal Rules of Bankruptcy Procedure: (i) authorizing and approving the terms and conditions of the asset purchase agreement (the "Asset Purchase Agreement") for the sale (the "Sale") of certain of the Debtor's assets listed on Exhibit "A" to the Asset Purchase Agreement (collectively the "Assets"), by the Trustee, to the stalking horse offeror, subject to higher or better offers for the Assets as may be tendered at a public auction sale (the "Auction"), to be held on April 11, 2011, at 1:00 p.m., free and clear of all liens, claims, encumbrances, security interests and other restrictions on transfer, except for certain permitted encumbrances, in accordance with, and subject to, the terms and conditions of the Asset Purchase Agreement (collectively, the "Liens"), with such Liens to attach to the proceeds of Sale, if any, in the amount and priority as they currently exist; (ii) authorizing the consummation of the transactions contemplated therein; (iii) approving certain sale procedures for the Auction (the "Auction Procedures"); (iv) approving a break-up fee for the Stalking Horse Offeror[1] (the "Break-Up Fee"); (v) fixing the date for a hearing on the Sale for April 14, 2011, at 10:00 a.m. (the "Sale Hearing"); (vi)

approving the form, time and scope of notice of the Auction (the "Notice Procedures", and collectively with the Auction Procedures, the "Sale Procedures"); and (vii) granting related relief; and a hearing having been held on that part of the Motion seeking approval of the Sale Procedures before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, United States Bankruptcy Court, Southern District of New York, Alexander Hamilton U.S. Custom House, Courtroom 723, New York, New York 10004 on the 15th day of March, 2011 (the "Sale Procedures Hearing"), at which time all parties in interest were afforded an opportunity to be heard; and upon the record of the Sale Procedures Hearing which is incorporated herein by reference; and after due deliberation and consideration of all the facts and circumstances herein; and upon the affidavit of service of the Motion on file with the Court; and the relief sought being determined to be in the best interest of the Debtor's estate and its creditors, and no further notice being necessary or required, it is

**ORDERED,** that the Motion is granted to the extent provided for herein, and all other relief sought in the Motion not granted herein shall be considered at the Sale Hearing; and it is further

**ORDERED,** that the notice of the Sale Procedures Hearing and Auction as given by the Trustee on less than ten (10) days notice, shortened under Fed R. Bankr. P. 9006(c), as described in the Motion is deemed adequate under the circumstances; and it is further

**ORDERED,** the offering of the Break Up-Fee to the Stalking Horse Offeror requesting such fee in his Asset Purchase Agreement is hereby approved in the amount of $25,000, as set forth in the Motion, and the Trustee is authorized and directed to pay the Break-Up Fee to the Stalking Horse Offeror from the proceeds of the Sale of the Assets at or subsequent to a closing actually occurring on such Sale if, and only if, a party other than such Stalking Horse Offeror is deemed to be the Successful Bidder at the conclusion of the Auction for the Assets; and it is further

**ORDERED,** that the Initial Overbid of $550,000, as contained in the Asset Purchase Agreement, and subsequent bidding increments of $10,000, as contained in the Auction

---

[1] All capitalized terms used but not defined herein shall have the same meanings ascribed to such terms in the Motion.

Procedures are approved; and it is further

**ORDERED,** that the Auction Procedures, annexed hereto as **Exhibit "A"**, are approved in all respects; and it is further

**ORDERED,** that the Auction will be held on April 11, 2011, at 1:00 p.m., at the offices of SilvermanAcampora, 100 Jericho Quadrangle, Suite 300, Jericho, New York, or such other place to be determined in the discretion of the Trustee, and the Trustee shall offer the Assets for inspection by appointment at reasonable times, requested by the interested party to SilvermanAcampora who will make such arrangements, so long as the request is made no less than forty-eight (48) hours prior to the requested inspection; and it is further

**ORDERED,** that a hearing will be held before the Court, on April 14, 2011, at 10:00 a.m. (the "Sale Hearing"), to consider the entry of an order (the "Sale Order")[2], authorizing the Sale to the Successful Bidder at the conclusion of the Auction; and it is further

**ORDERED,** that objections, if any, to the Sale, including but not limited to the Sale of the Assets shall be filed with the Bankruptcy Court by April 11, 2011 at 4:00 p.m., electronically in accordance with General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System may be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-399, and must be and served on: (i) SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753 (Attn: Brett S. Silverman, Esq.); (ii) the Office of the United States Trustee, 33 Whitehall Street, 22nd floor, New York, New York 10004 (Attn: Elisabetta G. Gasparini, Esq.); and (iii) Rabinowitz, Lubetkin & Tully, L.L.C., 293 Eisenhower Parkway, Suite 100, Livingston, New Jersey 07039 (Attn: Jay L. Lubetkin,

---

[2] A form of Sale Order is annexed to the Motion as Exhibit B, but the Court is not ruling on the form of that order at this time, but will consider same at the Sale Hearing.

Esq.); and it is further

**ORDERED,** the Notice Procedures are hereby approved, and the Trustee shall serve a copy of this Order, with exhibits, as well as all exhibits to the Motion (collectively, the "Sale Notice"): (i) on or before March 16, 2011, by first class mail, overnight delivery, facsimile, or e-mail on the Notice Parties in accordance with the Notice Procedures established in the Motion, and on any additional person or entity that the Trustee determines should receive the Sale Notice, with all affidavits of service to be filed prior to the Sale Hearing; and it is further:

**ORDERED,** that the Trustee is authorized to expend such funds necessary to effectuate the terms and conditions of this Order.

Dated: New York, New York
      March 15, 2011

    **/s/ STUART M. BERNSTEIN**
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A

TERMS AND CONDITIONS OF SALE

1. These Terms and Conditions of Sale are being promulgated in connection with the proposed court authorized public auction sale (the "Auction") by Kenneth P. Silverman, Esq. (the "Trustee"), the chapter 7 trustee of the estate of Spongetech Delivery Systems, Inc. (the "Debtor") of the Debtor's right, title, and interest in and to the assets (collectively, the "Assets") listed on and incorporated herein by Exhibit "A" annexed hereto.

2. By order dated March __, 2011, the public auction sale has been approved by the United States Bankruptcy Court for the Southern District of New York (the "Court"), where the Debtor's bankruptcy case is pending.

3. The Trustee has entered into a stalking horse asset purchase agreement (the "Asset Purchase Agreement") with Andrew Tzanides and Chao Jiang, or their designee or assign, for the Assets (the "Stalking Horse Offeror"). Prior to the commencement of the Auction, copies of the Asset Purchase Agreements are available for review by Qualified Bidders by telephonic request to SilvermanAcamora LLP, attn: Brett S. Silverman, Esq., (516) 479-6300. The Assets are only being sold as a whole and will not be offered or sold as separate lots.

4. The Assets are being sold pursuant to the terms and conditions of the Asset Purchase Agreement, therefore, all bids will be on the Asset Purchase Agreement and its annexed exhibits. **IN THE EVENT THESE TERMS AND CONDITIONS DIFFER FROM THE TERMS AND CONDITIONS OF THE ASSET PURCHASE AGREEMENT, THE TERMS AND CONDITIONS OF THE ASSET PURCHASE AGREEMENT SHALL CONTROL.** In the event the Asset Purchase Agreement is silent concerning the conduct of the Auction, these terms and conditions shall control.

5. The initial opening bid for the Assets (the "Opening Bid") is $500,000, offered by the Stalking Horse Offeror as part of the Asset Purchase Agreement.

6. The initial minimum overbid for the Assets shall be no less than $550,000 which is comprised of the aggregate of: (a) the Opening Bid, (b) the Break Up Fee ($25,000), and (c) an additional economic enhancement for the Debtor's estate ($25,000)(collectively, the "Initial Overbid"). Following the Initial Overbid, all subsequent overbids bids for the Assets must be in increments of $10,000.

7. For purposes of the Auction and these Terms and Conditions, a "Qualified Bidder" is either (a) the Stalking Horse Offeror; or (b) an individual or entity (each, an "Interested Bidder") which (i) registers with SilvermanAcampora at least forty-eight (48) hours prior to the commencement of the Auction (the "Bid Deadline"); (ii) tenders a good faith earnest money deposit by *wire transfer or bank check* (made payable to the SilvermanAcampora LLP as attorneys for Kenneth P. Silverman, Esq., the chapter 7 trustee of Spongetech Delivery Systems, Inc.) equal to ten (10%) percent of the Initial Overbid for the Assets ($55,000)("Deposit"); (iii) provides evidence, satisfactory to the Trustee, that the bidder has the financial ability to satisfy its bid in cash or by wire transfer; and (iv) provides evidence, satisfactory

to the Trustee, that the bidder has the ability to close the Sale no later than three (3) business days after the entry of an order approving the Sale or after the entry of the Inventory Order (as defined in the Asset Purchase Agreement), which ever is later in time (the "Closing Date").

8. Furthermore, notwithstanding the foregoing, the Trustee in his sole discretion, to promote competitive bidding to maximize the value of the Assets, reserves the right, in his sole discretion, to accept offers for the Assets subsequent to the Bid Deadline and upon such terms as he deems acceptable

9. Only Qualified Bidders will be permitted to bid for the Assets.

10. The full amount of the Deposit required herein will be payable by *wire transfer or bank check*, to be deposited with Trustee's attorneys (SilvermanAcampora LLP), and will be nonrefundable in the event that the bid is approved by the Bankruptcy Court. The Deposit from the Successful Bidder will be applied as a credit against the purchase price paid by the Successful Bidder. At the conclusion of the Auction, all Deposits made by Interested Bidders other than the Successful Bidder will be returned promptly after the closing of the Sale. If the Stalking Horse Offeror is determined not to be a Successful Bidder, their Deposit shall be refunded promptly after the closing of the Sale, pursuant to the terms of the Asset Purchase Agreement.

11. Bids at the Auction must be all cash, without financing, or other contingencies unless such contingencies are provided for in the Asset Purchase Agreement.

12. The Assets will be sold to the Qualified Bidder submitting the highest or best bid, subject to the reasonable business judgment of the Trustee.

13. If the Successful Bidder fails to close the purchase in accordance with the terms herein, subject to the terms of the Asset Purchase Agreement, if any, it will forfeit its Deposit and the Assets will be sold to the bidder submitting the next highest or best bid (as approved by the Court at the Sale Hearing).

14. Unless otherwise provided for in the Asset Purchase Agreement, the Successful Bidder must pay the purchase price for the Assets to the Trustee by *wire transfer or bank check* at the closing of title to the Assets (the "Closing"), and the Successful Bidder must close title to the Assets in accordance these Terms and Conditions of Sale and the terms of the Assets Purchase Agreement on the Closing Date, at the office of the Attorneys for the Trustee, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, although such Closing Date may be extended solely by the Trustee in his sole discretion. All applicable taxes, fees or other additional consideration shall be paid by the Successful Bidder in accordance with the Asset Purchase Agreement, and shall be paid at the Closing. **Time is of the Essence with respect to the Successful Bidder's obligation to pay the Balance of the Purchase Price on the Closing Date.** The Successful Bidder shall be obligated to Close title to the Assets and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel these Terms and Conditions of Sale

other than the Trustee's inability to deliver title to the Assets. Anything to the contrary contained in these Terms and Conditions of Sale notwithstanding, the Trustee shall have the right in his sole and absolute option to adjourn the Closing Date in order to remedy any defect to title.

15. The Trustee shall convey the Assets by the delivery of a Bill of Sale.

16. Unless provided for in the Asset Purchase Agreement, the Assets are being sold in accordance with 11 U.S.C. § 363, **"AS IS", "WHERE IS"** in their condition on the Closing Date, <u>without</u> any representations, covenants, guarantees or warranties by the Trustee <u>of any kind or nature whatsoever</u> (except to the extent provided for in the Asset Purchase Agreement), and free and clear of any liens, claims or encumbrances of whatever kind or nature subject to the terms and conditions of the Asset Purchase Agreement (collectively, the "Liens"), **except for Excluded Liens permitted under the Asset Purchase Agreement including intellectual property rights of third parties**, with such Liens, if any, to attach to the proceeds of the Sale of the Assets. By signing these Terms and Conditions of Sale, all bidders acknowledge that they have had the opportunity to review and inspect the Assets on which they are bidding and the form of the Bill of Sale that the Trustee will execute to convey the Assets and will rely solely thereon and on their own independent investigation and inspection of the Assets in making their bid. Neither the Trustee nor any of its representatives make any representations or warranties with respect to permissible uses of the Assets (except to the extent provided for in the Assets Purchase Agreement. All bidders acknowledge that they have conducted their own due diligence in connection with the Assets, and are not relying on any information provided by the Trustee or his professionals.

17. Neither the Trustee, his attorneys, his other professionals, or the Debtor's estate, are liable or responsible for the payment of fees of any broker that has not previously been approved by Order of the Court.

18. It is expressly understood that the Debtor shall <u>not</u> incur any cost or expense whatsoever in connection with the Sale of the Assets, except for the Trustee's own professional fees and expenses, unless otherwise provided for in the Asset Purchase Agreement, and the Successful Bidder herewith undertakes to pay any such expense of whatever kind or nature, even those costs and expenses which are payable by the Seller pursuant to any law or statute, including but not limited to, transfer, sales, or use taxes.

19. Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the title 11, United States Code (the "Bankruptcy Code") or otherwise limit or interfere with the jurisdiction of the Court. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee and subject to the terms and conditions of the Asset Purchase Agreement, or by the Court and subject to higher or better offers to be determined in the sole discretion of the Trustee. The Trustee reserves the right

to modify, subject to the terms of the Asset Purchase Agreement, the terms and conditions of sale at the public sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court, and maximize the value of the Assets for benefit of the Debtor's estate and its creditors.

20. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Auction for the Assets. By making a bid for the Assets, all Qualified Bidders will be deemed to have acknowledged having read these Terms and Conditions of Sale and having agreed to be bound by them.

21. If the Trustee is unable to deliver title to the Assets in accordance with these Terms and Conditions of Sale or the terms and conditions of the Asset Purchase Agreement, for any reason whatsoever, the Successful Bidder will have no recourse against the Trustee, or any Broker or Auctioneer previously approved by Order of the Court, <u>provided</u>, <u>however</u>, that all Qualified Bidders shall be entitled to a return of their Deposits.

22. The Trustee reserves its rights to withdraw the Assets from sale, subject only to the terms of the Asset Purchase Agreement, either prior, or subsequent to the Sale, for any reason whatsoever, as it, in his sole and absolute discretion, deems necessary or appropriate.

23. The Sale of the Assets is subject to confirmation by the Trustee and the Court. The Trustee shall notify the Successful Bidder at the close of the Auction that its offer has been accepted as the highest or best offer for the Assets, and that the Trustee will seek approval of the Court for that offer.

24. By participating in the Auction, all Qualified Bidders consent to the jurisdiction of the Court to determine such disputes under the Debtor's pending case. Any disputes concerning the Sale of the Assets shall be determined by the Court which shall retain sole and exclusive jurisdiction over all matters relating to the Assets and the Sale contemplated by these Terms and Conditions of Sale.

25. Pursuant to Bankruptcy Rule 6004-1 no appraiser, auctioneer or officer, director, stockholder, agent, employee or insider of any appraiser of auctioneer, or relative of any of the foregoing, shall purchase, directly or indirectly, or have a financial interest in the purchase of, any property of the estate that the appraiser or auctioneer has been employed to appraise or sell.

26. The Assets shall be delivered **"AS IS", "WHERE IS", "WITH ALL FAULTS"**.

I have read these Terms and Conditions of Sale and agree to be bound by them.

By: _____ Date: _____

Print Name: _____

## **MEMORANDUM OF SALE**

The undersigned has this __th day of April, 2011, agreed to purchase the Assets[3], vested in Kenneth P. Silverman, Esq., the Chapter 7 Trustee of the estate of Spongetech Delivery Systems, Inc., for the sum of $_____ DOLLARS and hereby promise and agree to comply with the Terms and Conditions of Sale of said Assets, as set forth in the annexed Terms and Conditions of Sale.

_____    _____
PURCHASER (Signature)              PURCHASER (Signature)

_____    _____
PRINT NAME OF PURCHASER            PRINT NAME OF PURCHASER

_____    _____
ADDRESS                            ADDRESS

_____    _____
TELEPHONE NUMBER                   TELEPHONE NUMBER

_____    _____
FAX NUMBER                         FAX NUMBER

Received from _____ the sum of $_____.00 DOLLARS, as a non-refundable deposit for the purchase of the Assets pursuant to the Terms and Conditions of Sale.

Anthony C. Acampora, Esq.
Trustee's Counsel
**SILVERMANACAMPORA LLP**
A Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Tel (516) 479-6300
Fax (516) 479-6301

---

[3] Capitalized terms contained herein shall have the same meaning ascribed to them in the annexed Terms and Conditions of Sale.