Spongetech Bankruptcy
David Patch
to:
bernstein.chambers, ksilverman, bsilverman, aacampora, elisabetta.g.gasparini
04/09/2011 01:56 PM
Show Details

1 Attachment


Judge Bernstein.pdf

The Honorable Judge Stuart M. Bernstein
United States Bankruptcy Judge
Southern District of New York
One Bowling Green
New York, NY 10004

RE: Spongetech Delivery Systems (Case No. 10-13647)

Honorable Judge Bernstein,

I am submitting to you a request for consideration in this bankruptcy proceeding. I believe that the efficiency and use of public proceeds has been distorted by the unsubstantiated claims of non-related parties and would request that you consider the facts presented when considering the future proceedings and use of public funds regarding this bankruptcy. If your views are in agreement with mine I would hope the court could request the trustee itemize the amount of past and current billings applied to this tangent effort by the non-related parties and consider a different means of paying off those debts that do not require public investment.

Thank You,

Dave Patch

**MEMO ENDORSED**

The Court declines to grant the relief sought in this email and the attachments. Any party-in-interest seeking relief must move on appropriate notice and in accordance with the requirements of the Bankruptcy Code and applicable rules.

SO ORDERED:
4/13/11

STUART M. BERNSTEIN
USBJ

April 9, 2011

The Honorable Judge Stuart M. Bernstein
United States Bankruptcy Judge
Southern District of New York
One Bowling Green
New York, NY 10004

RE: Spongetech Delivery Systems (Case No. 10-13647)

Honorable Judge Bernstein,

My name is David Patch and I approach this court on behalf of the public interests regarding the bankruptcy proceedings of Spongetech Delivery Systems. I seek justice with regards to the efficient use of public money in a case involving the alleged criminal acts of Spongetech executives.

Before I address my concerns, I must disclose that I am presently listed as a defendant in Spongetech Delivery v. NY Post Holdings et al. in the NY Supreme Court, Manhattan Bureau. Spongetech has sued me business interference regarding my efforts in disclosing to federal authorities the alleged criminal and civil fraud violations now playing out in US courts. In a striking parallel to this bankruptcy proceeding, that case languishes in distraction as the nature of that frivolous case has resulted in a failure by plaintiff's attorney to serve 50% of the named defendants. The plaintiff's attorney has likewise petitioned the courts for withdrawal only to be granted at the termination of this bankruptcy, and Steven Moskowitz, lead plaintiff, has filed a motion of discontinuance pending the results of this bankruptcy proceeding.

Trustee Silverman, and this court proceeding, continues to be similarly distracted by the efforts of individuals who simply fail to take responsibility for their bad decisions. The efforts of shareholders to make this bankruptcy into a securities fraud proceeding is beyond the scope of this court and as such, I ask that the courts dismiss all current and future efforts and expense in responding to such shareholder requests. With public dollars financing Trustee Silverman, I urge these courts to mandate that no future billable expense be granted in responding to unsupported shareholder demands.

**The Truth:**

Abusive naked short selling does not exist in Spongetech and never has.

Yes fails to deliver surfaced in the spring of 2009 but those fails to deliver were directly attributed to the alleged criminal actions of the executives of Spongetech and have nothing to do with alleged criminal market activities. This can easily be proven and is in fact analysis I performed in recognizing that Spongetech was a fraud back in 2009. Analysis I provided to the Securities and Exchange Commission and resulted in the retaliatory actions of the company in a legal court filing. It was similar analysis that intelligent shareholders used to terminate their investment and get out with minimal losses.

To give you a brief history on abusive short selling, in 2000 there were no regulations to stop the abusive practice. Wall Street and criminal enterprises could use a lack of transparency and a lack of compliance systems to manipulate public companies by selling stock that did not exist to settle. Regulators were in denial and were willing to let certain companies be abused into bankruptcy. One of the reasons regulators ignored the issue for as long as they did was because in their investigations they

identified that most who claimed foul play by abusive short selling were in fact internally orchestrated fraud schemes. It took many years, a focused group of private individuals, and several Securities and Exchange Commission rule changes to address the abusive practice.

By 2009 the abusive practices of 2000 were significantly reduced. Transparency of fails to deliver were now made public on a 2-3 week delayed basis and failed trades are now under a higher level of scrutiny to be settled if late. In 2000 this was a missing component in detecting abuse but is no longer a missing component. What came with this transparency of data was a better ability to understand what was happening internally in a company.

Is the problem completely eradicated? No, like the war on any crime you can never completely remove the acts as criminals simply alter their process. But you can certainly make it harder to execute and harder to hide.

The shareholders of Spongetech do not wish to recognize the changes made to securities laws over the years and the changes made in higher transparency of trade data. Instead the shareholders hold on to a false conspiracy theory originated by the very individuals under federal indictment for securities fraud. These shareholders live in a belief of the past because it suits their agenda of placing blame elsewhere.

**The Data:**

Below is a table of the fails to deliver in Spongetech during the height of the alleged criminal fraud (May/June 2009). It is made available at www.sec.gov.

| SETTLEMENT DATE | CUSIP | SYMBOL | QUANTITY (FAILS) | DESCRIPTION | PRICE |
| --- | --- | --- | --- | --- | --- |
| 20090504 | 849109103 | SPNG | 791,000 | Spongetech Delivery Systems, I | 0.02 |
| 20090505 | 849109103 | SPNG | 1,267,622 | Spongetech Delivery Systems, I | 0.02 |
| 20090506 | 849109103 | SPNG | 641,000 | Spongetech Delivery Systems, I | 0.02 |
| 20090507 | 849109103 | SPNG | 1,836,000 | Spongetech Delivery Systems, I | 0.02 |
| 20090508 | 849109103 | SPNG | 1,916,444 | Spongetech Delivery Systems, I | 0.02 |
| 20090511 | 849109103 | SPNG | 1,672,519 | Spongetech Delivery Systems, I | 0.02 |
| 20090512 | 849109103 | SPNG | 413,569 | Spongetech Delivery Systems, I | 0.02 |
| 20090513 | 849109103 | SPNG | 425,000 | Spongetech Delivery Systems, I | 0.02 |
| 20090514 | 849109103 | SPNG | 300,000 | Spongetech Delivery Systems, I | 0.03 |
| 20090515 | 849109103 | SPNG | 300,000 | Spongetech Delivery Systems, I | 0.03 |
| 20090518 | 849109103 | SPNG | 567,922 | Spongetech Delivery Systems, I | 0.04 |
| 20090519 | 849109103 | SPNG | 517,913 | Spongetech Delivery Systems, I | 0.05 |
| 20090520 | 849109103 | SPNG | 1,791,216 | Spongetech Delivery Systems, I | 0.04 |
| 20090521 | 849109103 | SPNG | 1,000,149 | Spongetech Delivery Systems, I | 0.05 |
| 20090522 | 849109103 | SPNG | 91,402 | Spongetech Delivery Systems, I | 0.04 |
| 20090527 | 849109103 | SPNG | 1,866,781 | Spongetech Delivery Systems, I | 0.04 |
| 20090528 | 849109103 | SPNG | 6,845,850 | Spongetech Delivery Systems, I | 0.04 |
| 20090529 | 849109103 | SPNG | 15,869,800 | Spongetech Delivery Systems, I | 0.04 |
| 20090601 | 849109103 | SPNG | 24,381,363 | Spongetech Delivery Systems, I | 0.04 |
| 20090602 | 849109103 | SPNG | 429,019 | Spongetech Delivery Systems, I | 0.04 |
| 20090603 | 849109103 | SPNG | 228,950 | Spongetech Delivery Systems, I | 0.04 |
| 20090605 | 849109103 | SPNG | 223,400 | Spongetech Delivery Systems, I | 0.08 |
| 20090608 | 849109103 | SPNG | 100,000 | Spongetech Delivery Systems, I | 0.1 |
| 20090610 | 849109103 | SPNG | 11,000 | Spongetech Delivery Systems, I | 0.14 |

| | | | | | |
|---|---|---|---|---|---|
| 20090611 | 849109103 | SPNG | 680,649 | Spongetech Delivery Systems, I | 0.17 |
| 20090612 | 849109103 | SPNG | 518,435 | Spongetech Delivery Systems, I | 0.24 |
| 20090615 | 849109103 | SPNG | 342,244 | Spongetech Delivery Systems, I | 0.17 |
| 20090616 | 849109103 | SPNG | 1,610,737 | Spongetech Delivery Systems, I | 0.15 |
| 20090617 | 849109103 | SPNG | 3,429,362 | Spongetech Delivery Systems, I | 0.14 |
| 20090618 | 849109103 | SPNG | 7,115,705 | Spongetech Delivery Systems, I | 0.14 |
| 20090619 | 849109103 | SPNG | 494,014 | Spongetech Delivery Systems, I | 0.15 |
| 20090622 | 849109103 | SPNG | 187,169 | Spongetech Delivery Systems, I | 0.17 |
| 20090623 | 849109103 | SPNG | 342,037 | Spongetech Delivery Systems, I | 0.16 |
| 20090624 | 849109103 | SPNG | 245,805 | Spongetech Delivery Systems, I | 0.15 |
| 20090625 | 849109103 | SPNG | 2,412,437 | Spongetech Delivery Systems, I | 0.15 |
| 20090626 | 849109103 | SPNG | 291,141 | Spongetech Delivery Systems, I | 0.13 |
| 20090629 | 849109103 | SPNG | 3,990,368 | Spongetech Delivery Systems, I | 0.12 |
| 20090630 | 849109103 | SPNG | 7,890,269 | Spongetech Delivery Systems, I | 0.11 |

This data has been published on the SEC website for the past few years as part of the short selling reforms I refer to. It was after hundreds of FOIA requests I personally made regarding specific stocks that the SEC recognized the value of this data and elected to make it public by law.

What the data describes is the aggregate daily fails to deliver in any trading security. By aggregate the SEC is very clear in detailing that the number presented on any given day represents the fails as tallied on that day including all new and all previously failed trades.

> *Fails to deliver on a given day are a cumulative number of all fails outstanding until that day, plus new fails that occur that day, less fails that settle that day. The figure is not a daily amount of fails, but a combined figure that includes both new fails on the reporting day as well as existing fails. In other words, these numbers reflect aggregate fails as of a specific point in time, and may have little or no relationship to yesterday's aggregate fails. Thus, it is important to note that the age of fails cannot be determined by looking at these numbers. In addition, the underlying source(s) of the fails-to-deliver shares is not necessarily the same as the underlying source(s) of the fails-to-deliver shares reported the day prior or the day after.*[1]

For example, on 20090601 the SEC data publishes a fail to deliver level in Spongetech at over 23 Million shares. Up nearly 9 million shares from the previously traded day. According to the SEC the 24 million carries some or all of the preceding 15 million shares from the previous day and includes all additional fails added since then. But more importantly, the next day the 24+ Million fails had all but settled as the fails to deliver on 20090602 was barely 400,000 shares.

The reason the fails for Spongetech were spiky is due in fact to the alleged illegal acts of the company officers. As the officers were allegedly dumping illegal paper in to the markets (sale of unregistered securities) the trade settlement of the paper exceeded the 3-day settlement period and resulted in a settlement failure. Only after the paper is converted to electronic shares will they settle within a normal settlement period.

Shareholders, BuyIns.net, and many others have inaccurately added the reported fails to deliver on a day-to-day basis and in doing so have derived some imaginary 50 Billion naked short numbers. Trustee Silverman has latched on to this number in his communications with shareholders and has

---

[1] SEC Explanation of Fails to deliver Data http://sec.gov/foia/docs/failsdata.htm

reported it out to the court as being a possibility when in fact it is not at all possible. The data presented by the regulators prove that.

If there are 50 Billion naked shorts in the hands of long shareholders, how does the stock trade hundreds of millions of shares in November 2009 for example and have relatively few fails to deliver? Below are the numbers for the second half of the month of November 2009. The void representing 11/18 – 11/30 where no information is published implies that no FTD's were in the system that day.

| | | | | | |
|---|---|---|---|---|---|
| 20091116 | 849109103 | SPNG | 1960 | Spongetech Delivery Systems, I | 0.05 |
| 20091117 | 849109103 | SPNG | 11960 | Spongetech Delivery Systems, I | 0.05 |
| 20091118 | 849109103 | SPNG | 1960 | Spongetech Delivery Systems, I | 0.05 |
| 20091130 | 849109103 | SPNG | 15000 | Spongetech Delivery Systems, I | 0.05 |

An analysis of this data perfectly illustrates how the reporting happens. On 11/16 there was 1960 aggregate fails. The next day the number rose to 11,960 representing an additional 10,000 shares failed settlement. Because 11/18 went back to 1960 shares it is logical to conclude that the 1960 shares failed for at least 3 days beyond the settlement period but the 10,000 shares of 11/17 required one additional day beyond the normal period to settle.

Statistically, at a ratio of 50 billion alleged illegal shares to 3 billion legal shares in the hands of longs, the odds of an illegal share trading far exceeds that of a legal share trading and yet no fails to deliver are being reported by the DTCC clearance and settlement system. None of the holders of the 50 billion illegal shares were being traded and only holders of the 3 billion were? Impossible!

All of this data and evidence has been provided to shareholders and regulators over the years. The federal authorities indicted the company executives and not the market participants once investigating the data. The shareholders, who failed to respond to public warnings by private individuals such as myself and from federal regulators thru trade suspensions, wells notices, and federal civil and criminal charges, remain in denial. By appeasing these shareholders pipe dreams the courts and trustee Silverman is wasting the public's money.

**Legal Grounds:**

Beyond the basic presumption that the shareholders are not creditors to the bankruptcy, the court must likewise recognize that the company has no obligations to shareholders once the company has issued the shares to the open market.

A company chooses to go public in attempts to pay for their operations by selling stock to the public. Once sold, the stock is no longer under the control of the company. How it is sold, at what price, etc…is entirely up to the public markets and the only influences the company has on this stock is based on performance and future share issuances, in this case the near 3 billion shares issued by Spongetech. That is the legal and total public shares that any potential buyer of a public shell will use in the valuation of this shell.

If the shareholders are under the belief that there are naked short sales that have devalued their personal stake in this, these individuals have the rights of the civil court process to seek out personal counsel and seek legal action against those from the markets that have involvement in this. Those being the market participants, market makers, and any short sellers they can prove acted illegally. It is not within the legal rights of these shareholders to impose the cost of any investigative effort on the bankruptcy courts and the public as these entities is not a related party in this bankruptcy proceeding.

The market participants are not debtors or creditors to the company in bankruptcy. They are merely the participants that are trading off the stock the company sold off to raise capital.

**Conclusion:**

The courts and Trustee Silverman have an obligation to the public to act within the boundaries of the proceedings and to do so with an efficiency that protects the public's investment in this proceeding. Trustee Silverman should be restricted by the courts from billing any future hours to support the wild conspiracies of shareholders who seek nothing more than to waste the courts time and disrupt these proceedings. There has never been any real evidence provided by this group that wrongdoing took place. Everything to date is at best circumstantial and at worst simply delusional denials of poor decisions made. These people have shown their inability to grasp reality by implying on several occasions that everybody from your honor down to each trustee is involved in the conspiracy to cheat them.

Our markets are not perfect. The regulators need to take stronger action on fraud so that fewer victims are created. But the United States court system provides legal options to those cheated and use of the bankruptcy courts is not one of those options.

I urge you to stop this circus that has become the Spongetech Delivery System Bankruptcy and put a clear set of guidelines on how the courts and the Trustee will address future shareholder demands.

Finally, I urge this court to force trustee Silverman to address all cases pending before the courts in which Spongetech is identified as plaintiff. Those cases are now under the guidance of this trustee and as a defendant identified in one such case, my rights of claim against the counsel representing the case is on-hold until such time as this case is concluded. The cases were filed with the sole intent of imposing harm and injury on the defendants and trustee Silverman is obligated to either proceed forward or motion for dismissal to uphold the rights of the accused.

If these cases are to proceed, the legal expenses on these civil matters would make the counsel for these cases creditors to the bankruptcy and would thus require factoring when addressing creditor payouts.


David E. Patch
21 Pheasant Lane
Topsfield, Ma. 01983


    cc. Ken Silverman, Spongetech Trustee
        Brett Silverman
        Anthony Acampora
        Elizabeth Gasparini


In support of my credentials on this matter I have attached letters documenting my work with state regulators and the SEC OIG relative to naked short selling. I would similarly offer up a willingness to speak with the courts at expense should more details be necessary.

**From:** OIG [mailto:OIG@SEC.GOV]
**Sent:** Friday, April 04, 2008 3:06 PM
**To:** Patch, David
**Subject:** Naked Short Selling - From SEC OIG

Dear Mr. Patch,

You previously contacted the Office of Inspector General on the subject of naked short selling. We would like to provide you with an update on our progress regarding this issue.

We have conducted a thorough review of all the correspondence provided to us about naked short selling. We also met with Mr. David Patch on Wednesday, March 26, 2008, at which time he gave us an extensive briefing on this topic. We understand the seriousness of the concerns about naked short selling and have begun looking into potential audit issues related to this matter.

Thank you again for providing us with information about naked short selling and we will keep you advised of further developments on this topic.

Sincerely yours,

David Kotz

Inspector General

Office of Inspector General

U.S. Securities and Exchange Commission

September 8, 2005

Dear Mr. Patch,

Although REG SHO is a solid first step in eliminating certain abusive practices, a significant number of issues remain with respect to naked short selling. As you know, the emphasis of REG SHO is, by and large, the "threshold" stocks traded on the NYSE and the NASDAQ. It appears that the SRO's have begun to pay attention to naked short selling now that it has become an SEC rule. Nevertheless, it seems clear that had the SRO's and the SEC exercised greater diligence in enforcing pre-existing rules, REG SHO would likely have been unnecessary.

The most egregious abuses pertaining to naked shorting are occurring on the bulletin board and pink sheets. This fact is particularly troubling because REG SHO fails to address or provide any meaningful reform in these marketplaces. I believe this failure is due, in large part, to the lack of resources committed to these markets and the resultant lack of transparency.

Regulators must devise and implement solutions that will offer the maximum effect without hindrance to the legitimate financial marketplace. REG SHO, once enhanced, should have such an effect. However, there remains a substantial distance between REG SHO and the ultimate goal of including substantive protections for small business issuers.

It is these small businesses in our communities who take entrepreneurial risks to grow their companies through listings on the OTCBB and Pink Sheets. These small businesses not only provide employment for the residents of their communities, but also offer the general public the opportunity to invest in local businesses with promising products or services.

While it may be true that a number of small companies lack the financial depth to succeed, they are nonetheless entitled to succeed or fail by their own honest business decisions and not as a result of the corrupt acts of abusive short sellers.

Without transparency, we cannot, as yet, precisely identify each small business that failed as a direct result of abusive naked short selling nor quantify the exact number of jobs lost to our local economies when these companies are forced to close their doors. However, we can say to a certainty that the impact on many of our local communities has been injurious. As a result, we have observed an unmistakable loss of investor confidence by the arguably millions of investors who have lost their monies.

Members of Congress are confronted with a myriad of constituent concerns, many of which may, at first blush, appear to have a more direct affect on constituents than the problem of abusive naked short selling. In fact, abusive short selling poses a direct threat to the economic well being of small business and the entire community.

Congressional legislators want and, by necessity, must have the utmost confidence in governmental agencies' capacity to carry out their legislative mandates. The SEC is moving slowly forward as REG SHO in its current state is studied and debated seemingly ad infinitum. While slight modifications to the existing Rule may result from such an approach, a far more threatening pattern of abuse is certain to continue unless wholesale reforms are made to remedy the concerns of the small business community. Without further substantive reform to REG SHO, many more small companies in our communities will succumb to failure - not through the mechanism of the marketplace but at the hands of manipulators.

The fact that you, along with an ever-growing group of concerned citizens, have continued to champion the issue of reform in the naked short selling area for so long is the primary reason we are beginning to see reform of any sort. I would caution people not to assume that because reform has begun that the issue of abusive short selling will soon become a thing of the past. Without both a concerted effort to inform and educate those in power on what issues remain and a commitment to implement real, workable solutions we are unlikely to see any meaningful reform.

Your determination and persistence in seeing that this wrong is righted is in part responsible for my interest, as well as that of other state regulators. We have established a working project group in this area and have been meeting with SRO's and issuers alike. We will continue to exert substantial effort to remedy the remaining abusive practices in naked short selling until we are confident at the state level that the companies in our communities and citizens that invest in them will no longer be the possible targets of abusive naked short sellers.

Sincerely,

Ralph A. Lambiase
NASAA Past-President and
Director, Connecticut Division of Securities


CC: Tanya Solov, Director, Illinois Securities Department
Tanya Durkee, Deputy Commissioner, Vermont Department of Securities
Rex A. Staples, General Counsel, NASAA



**NORTH AMERICAN SECURITIES ADMINISTRATORS ASSOCIATION, INC.**

750 First Street, N.E, Suite 1140
Washington, D.C. 20002
202/737-0900
Fax: 202/783-3571
E-mail: info@nasaa.org
Web Address: http://www.nasaa.org

**NASAA**

September 8, 2005

Dear Mr. Patch,

Although REG SHO is a solid first step in eliminating certain abusive practices, a significant number of issues remain with respect to naked short selling. As you know, the emphasis of REG SHO is, by and large, the "threshold" stocks traded on the NYSE and the NASDAQ. It appears that the SRO's have begun to pay attention to naked short selling now that it has become an SEC rule. Nevertheless, it seems clear that had the SRO's and the SEC exercised greater diligence in enforcing pre-existing rules, REG SHO would likely have been unnecessary.

The most egregious abuses pertaining to naked shorting are occurring on the bulletin board and pink sheets. This fact is particularly troubling because REG SHO fails to address or provide any meaningful reform in these marketplaces. I believe this failure is due, in large part, to the lack of resources committed to these markets and the resultant lack of transparency.

Regulators must devise and implement solutions that will offer the maximum effect without hindrance to the legitimate financial marketplace. REG SHO, once enhanced, should have such an effect. However, there remains a substantial distance between REG SHO and the ultimate goal of including substantive protections for small business issuers.

It is these small businesses in our communities who take entrepreneurial risks to grow their companies through listings on the OTCBB and Pink Sheets. These small businesses not only provide employment for the residents of their communities, but also offer the general public the opportunity to invest in local businesses with promising products or services.