**SILVERMANACAMPORA LLP**
Attorneys for Kenneth P. Silverman, Esq.,
 Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Brett S. Silverman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                                          Chapter 7

SPONGETECH DELIVERY SYSTEMS, INC.,       Case No. 10-13647 (SMB)

              Debtor.
-----------------------------------------------------------------x

### THE TRUSTEE'S REPLY TO THE OBJECTIONS BY
### JAY BOOTH, BRIAN BRADLEY AND JAMES SASSER
### TO THE TRUSTEE'S MOTION PURSUANT TO BANKRUPTCY CODE
### §105(A) AND BANKRUPTCY RULE 9019(A) SEEKING ENTRY OF AN
### ORDER APPROVING TWO SETTLEMENT AGREEMENTS BY AND
### <u>BETWEEN THE SECURITIES AND EXCHANGE COMMISSION AND THE TRUSTEE</u>

Kenneth P. Silverman, Esq., as the chapter 7 trustee (the "Trustee") of the estate of Spongetech Delivery Systems, Inc. (the "Debtor"), by his attorneys, SilvermanAcampora LLP, submits this reply to the objections filed by James Sasser ("Sasser"), Brian Bradley ("Bradley") and Jay Booth ("Booth") in opposition to the Trustee's motion pursuant to Bankruptcy Rule 9019 seeking an order approving two settlement agreements between the Securities and Exchange Commission (the "Commission) and the Trustee (the "SEC Motion"), and respectfully represents as follows:

**Preliminary Statement**

1.        There have been only three responses filed in opposition to the Trustee's Motion. On June 8, 2011, Booth filed a letter (in which he again discussed the Debtor's share structure

but did not address any of the relevant issues regarding the Trustee's Motion the "Booth Letter").[1]

2. On June 14, 2011, Bradley filed a letter with the Court in which he objected to the SEC Motion and requested, without any factual or legal basis, that the Court substitute its business judgment for that of the Trustee and direct the Trustee to convert a debt obligation from Business Talk Radio into an equity interest so that the Debtor can be recapitalized and the assets that were recently sold can be repurchased from that buyer at a substantial premium and the Debtor's liquidation converted to a chapter 11 reorganization (the "Bradley Letter").

3. Finally, on June 14, 2011, Sasser filed an affidavit (the "Sasser Affidavit") in further support of his motion to compel the Trustee to set aside funds to pay special counsel to pursue claims on behalf of the Debtor's estate (the "Sasser Motion") even though he is admittedly aware that Reid Collins & Tsai LLP ("Reid Collins") has been retained with the approval of the Court on a full contingent fee basis. Sasser also opposed the SEC Motion by stating, again without any real factual basis and based solely upon hearsay and innuendo, that the Trustee and his counsel have misled the Court.

4. Neither Booth, nor Bradley nor Sasser suggest that that portion of the SEC Motion which would authorize the Trustee to enter into a stipulation with the Commission that would permanently enjoin the Debtor from violating United States securities laws is inappropriate. Similarly, other than impugning the integrity of the Trustee and his counsel, neither Booth, nor Bradley nor Sasser provide any legal basis upon which the de-registration of the Debtor's securities can be avoided.

5. Rather, each of them blithely ignores the fact that the Debtor has not filed years of *required* Forms 10Q and 10K with the Commission and has never been excused from doing

---

[1] The Booth Letter has no relevance to the hearings to be conducted on June 21, 2011. Booth's letter should have been filed in support of the motions made by Hubbard and Venkatesh, which the Court denied in April 2011 and will not be addressed.

so. None of them has cited any authority that would even suggest that the Debtor could mount a defense to the de-registration of its securities by the Commission. Finally, none of them has identified the benefit that the Debtor's estate or its creditors would receive or continue to receive from the defense against the de-registration of the securities of a chapter 7 debtor who conducts no business and whose primary business assets have been sold.

6. The Trustee has sought approval of the stipulations with the Commission in order to effect the orderly liquidation and cessation of the Debtor's business. Shareholders, including Bradley, who has recently requested the that Trustee sell treasury shares to him, continue to trade the shares of the Debtor despite its chapter 7 status. If the SEC Motion is not granted and the settlements are not approved, in order to protect the trading public from the misinformation and disinformation that pervades the Internet (and has unfortunately made its way into this Court), the Commission *will* seek the de-registration of the Debtor's securities. As explained in the SEC Motion, there is no defense to that administrative proceeding. Accordingly, in the SEC Motion should be granted.

## THE SASSER MOTION SHOULD BE DENIED

7. Sasser's primary basis for pressing his motion to compel the Trustee to spend money to prosecute claims that Reid Collins is handling under a contingency fee arrangement is that the Trustee and his counsel have either lied to the Court concerning the true nature of that retention *or* the Court did not understand the impact of its own orders regarding the retention.[2] The absurdity of both of those positions cannot be understated.

---

[2] For example, Sasser suggests that, as a result of the Sasser Motion, the Trustee postponed the sale of the Debtor's assets as a tactic. Sasser flatters himself. Despite his attempts to appear as if he is fully informed on all of the issues that he addresses, Sasser fails to advise the Court that the Trustee posted notice of the closing of the asset sale on June 8, 2011 on the Trustee's Spongetech website on June 10, 2011, four (4) days *before* Sasser signed his affidavit. Certainly, a fully informed individual such as Sasser, who apparently runs one of the many Spongetech internet message boards, should have known that the sale had been concluded before he advised the Court that the failure to close was a "tactic." Sasser's hearsay diatribe concerning alleged "offers" is also uninformed. Although inquiries have been continually made by the "shareholder LLC", that group has never managed to make an offer in any aspect of the case including for the purchase of Dicon. Inquiries are independently made by various members of the group and their counsel (who have all admitted that they do *not* share the information that they

3

8. Sasser's contention that "[i]t is pertinent that Judge Bernstein did not see the actual engagement letter, but only the Trustee's self-serving description of it. Since Mr. Silverman prepared the actual Order which was signed, it is also possible that Judge Bernstein did not realize that it differs from what the Trustee says the payment arrangements are" is demonstrably wrong. The record clearly reflects that the Reid Collins retention application was vetted and approved by the Office of the United States Trustee, was attached as an exhibit to the motion, and was filed with, and reviewed by, the Court. The suggestion that the Court approved a special counsel retention without the actual engagement letter is ridiculous.

9. Sasser's further contention that Reid Collins is subject to some secret or hidden compensation arrangement is similarly misinformed because any compensation must be approved by the Court before it is paid.

10. Simply put, there is no reason to reserve funds to pay special counsel that has agreed to work on a contingency arrangement so that Sasser, whose total loss in the case amounts to $3,000, can be satisfied that Reid Collins is diligently pursuing claims.

11. The Sasser Motion must be denied.

### THE SEC MOTION SHOULD BE GRANTED

12. Rather than explain the benefit that the Debtor's estate and creditors will receive if the Sasser Motion is granted and the SEC Motion is denied, Sasser burdens the Court with 18 pages of inaccurate, misleading, and misinformed attacks upon the Trustee and his counsel all of which are intended to convince the Court to force the Debtor's creditors, the Trustee and his professionals to bear the financial burden of pursuing the shareholders' interests and purported "naked short sale" claims (the "NSS Claims").

13. Indeed, despite all of the admonitions by the Court and the Trustee that NSS Claims are not properly the subject of litigation by the Debtor's estate, Sasser states that "[w]hile the court may have encouraged the shareholders to investigate the naked shorts on their own,

---

receive) and no formal offer or action is ever taken by them.

this can be accomplished more efficiently by the Trustee." Sasser Affidavit, ¶33. He also conclusorily contends that the creditors of the Debtor's estate would benefit from the investigation into the NSS Claims, but does not provide *any* evidence of that purported benefit.

14. The simple fact of this case is that the de-registration of the Debtor's securities will prevent the shareholders from ever unloading the Debtor's stock on other unsuspecting buyers and that the existing shareholders do not want that option foreclosed. Indeed, none of the objectants have explained the benefits that any interested party would receive by the de-registration of the securities of a company that stopped conducting business in 2010, lost its manufacturing affiliate in 2010, has sold its name, trademarks and existing inventory and has tens of millions of dollars of claims against it. Certainly, the only reason to all those shares to continue to be registered is so that certain unscrupulous shareholders can sell them to unsuspecting dupes.

15. Bradley's contention that the SEC Motion should be denied because the Trustee should be directed to convert the loan from RM Enterprises International, Inc. to Blue Star Media Inc. f/k/a Map VI Acquisition, Inc. (the "BTR Note"), which matures on June 25, 2011, from debt to equity so that the Trustee can " recapitalize" the Debtor with the proceeds from the BTR Note is also extremely wide of the mark.

16. The Debtor's ownership of the BTR Note is still the subject of speculation and is inconclusive at this juncture of the case. In the last several weeks, several developments have occurred that make the collection of a portion or all of the BTR Note in the future more likely than had been previously believed by the Trustee and his retained professionals. Nevertheless, serious and unsettled questions remain concerning (a) the claims by the Commission in and to the BTR Note proceeds, (b) the collection of that obligation, (c) the amount that can be collected, and (d) the timing of the realization upon that asset.

17. Blue Star Media and its counsel have advised Reid Collins and SilvermanAcampora LLP that Blue Star Media does *not* have the resources to pay the BTR

Note (even assuming that the other issues were resolved) when it becomes due on June 25, 2010 and that it is only through the sale of its radio stations and networks (which have been for sale for quite some time) that any payment to any claimant will be accomplished.

18. Thus, despite the "values" set forth in the Bradley Letter, the value of the BTR Note and radio stations and networks that represent the assets of Blue Star Media will ultimately be determined by the sale of those assets.

19. Bradley and other shareholders believe that payment of the BTR Note for its full face value is a foregone conclusion and that the BTR Note will infuse enough capital into the Debtor to "rehabilitate" it and allow its common stock to be traded. Indeed, Bradley recently requested that the Trustee sell treasury shares to him so that he can have more of a position when the Debtor emerges from bankruptcy. (A copy of Bradley's email is annexed as **Exhibit 1**).

20. Bradley's email is a perfect example why de-registration is necessary. The shareholders have steadfastly refused to educate themselves regarding the bankruptcy process and have clung to the incorrect notion that the bankruptcy case must be run for their benefit. Unless the Debtor's securities are de-registered, shareholders like Bradley will purchase wholly worthless shares from any source on the misguided assumption that they will have a value at some point in the future.

21. Although the fraud perpetrated on the shareholders in this case is unfortunate, the Court should not allow that misfortune to blossom into another "pump and dump" of the Debtor's common shares.

**Conclusion**

22. Sasser, Bradley, Booth and other shareholders fail to comprehend that the Debtor can not be rehabilitated. Chapter 7 requires liquidation and distribution, not reorganization, no matter how much money is recovered. None of the shareholders objected to conversion of the case. The major assets of the Debtor's estate have been sold, including its

name and other intellectual property. The Debtor has failed to make its required filings under the relevant securities laws. Although many shareholders do not believe it to be the case, the Commission will de-register the Debtor's securities to protect them from further fraud relating to the Debtor.

23. Under these circumstances, the SEC Motion should be granted in its entirety and the Sasser Motion should be denied in its entirety.

Dated: Jericho, New York
     June 17, 2011

**SILVERMANACAMPORA LLP**
Attorneys for Kenneth P. Silverman, Esq.,
  Chapter 7 Trustee

By: *s/ Anthony C. Acampora*
    Anthony C. Acampora
    Brett S. Silverman
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
(516) 479-6300